June Term, 1861.

ATKINSON v. RICHARDSON et al.

---

OGILVIE VS. RICHARDSON and others.
ATKINSON VS. RICHARDSON and others.

A person who bids off property at a foreclosure sale becomes a *quasi* party to the foreclosure suit, so as to subject himself to the jurisdiction of the court; and on a proper application in the action, the court will make an order to compel him to pay in the amount of his bid.

The fact that a person who bid off property in his own name at such a sale, was bidding for another, will not relieve him from the obligation of his contract.

Where property was sold on a decree of foreclosure, subject to the payment of a prior mortgage, and the person by whom it was bid off, afterwards, on the same day, purchased it at a foreclosure sale under such prior mortgage and acquired a good title at such sale, he will not be relieved from his bid at the first sale on the ground that the court in that case had failed to obtain jurisdiction over one of the mortgagors, and other parties defendant.

Where A, after bidding off property at a foreclosure sale, refused to complete his purchase, but afterwards the commissioner's deed of the property to him was left with the complainant's solicitor, and by him delivered to B with A's consent; *Held*, that A was bound by B's acceptance of the deed, and the court would require him to pay in the amount of his bid.

June Term, 1861.

ATKINSON
v.
RICHARDSON
et al.

After the time within which the rules of this court require a motion for a re-hearing of a cause to be made, has expired, and the papers in the cause have been remitted to the court below, an order cannot be granted extending the time for filing such motion.

APPEALS from the Circuit Court for *Rock* County.

Some time after the sales of certain mortgaged premises under decrees of foreclosure obtained in the Rock circuit court in the actions above named, *William Richardson*, one of the defendants in the first named action, applied to the court for an order to compel *Ensign H. Bennett*, the purchaser at the sale in said action, to pay so much as remained unpaid of the amount bid by him at said sale. A like application was made by *Hamilton Richardson* in the case of *Atkinson vs. Richardson and others*, to compel said *Bennett* to pay so much as remained unpaid of the amount bid by him at the sale under the decree in that case. The facts are stated in the opinion of the court.

*B. B. Eldredge* and *James H. Knowlton*, for appellant.

*I. C. Sloan*, contra.

August 21.      *By the Court*, PAINE, J. These two appeals being closely connected, will be considered together. The material facts upon the questions here presented are these. *Hamilton Richardson* and William Truesdell executed a mortgage to J. H. Ogilvie on certain lots in Janesville, upon which was a mill, with a right to the perpetual use of four hundred square inches of water, to secure the payment of three thousand dollars, in three instalments of one thousand each. When the first instalment became due, it seems to have been paid by *William Richardson*, and an assignment of an interest in the mortgage equal to the instalment was made to him, under an agreement, however, that the two subsequent instalments should have priority. Proceedings were afterwards taken to foreclose this mortgage by Ogilvie, when the second instalment became due, and a decree was made for the sale of the property, and that the balance due to Ogilvie be first paid, and then the one thousand dollars belonging to *William Richardson*.

On the same day of the making of this mortgage, the mortgagors, having the right to use six hundred more square inches of water, gave a second mortgage on the same premises, with the right to the whole one thousand square inches of water, to A. Hyatt Smith and others, to secure the payment of twenty-two hundred dollars. The Ogilvie mortgage is conceded to have been the prior mortgage. The second mortgage was assigned to Monroe Atkinson, and was also foreclosed. The property was advertised for sale, under both foreclosures, on the same day; the sale under the Atkinson mortgage being however about two hours first in point of time. At this sale the property, including the one thousand square inches of water, six hundred of which were not covered by the other mortgage, was struck off to *Ensign H. Bennett*, the highest bidder, for the sum of thirty-five hundred dollars, subject to the payment of the amount due upon the other mortgage, that being the express condition of the sale.

From this sale *Bennett* went to the other, and bid off the property on that, for the sum of $3,805. Upon this enough was paid down to satisfy Ogilvie for what was then due, and on subsequent proceedings taken by him, he was satisfied for the balance due to him; but the thousand dollars adjudged due to *William Richardson* has never been paid, and this is an application by him to compel the purchaser to pay it.

After having bid off the property at the Ogilvie sale, *Bennett* then refused to complete his purchase at the other sale, and the commissioner executed a deed and delivered it to the complainant's solicitor to be delivered or disposed of as he should see fit. It seems that *Bennett* was bidding for the benefit of Truesdell, and that he subsequently conveyed the property to Truesdell, including the one thousand square inches of water, six hundred of which he could only have acquired title to by virtue of the purchase under the Atkinson mortgage. It is claimed, on the one hand, that this was the result of an arrangement made between *Bennett* and Truesdell, and Tallman, Atkinson's solicitor, by which the latter agreed to take Truesdell's note for the amount due

Atkinson, and to deliver the commissioner's deed to *Bennett.* But *Bennett* denies that he ever assented to the acceptance of this deed, and claims that he supposed he was only conveying to Truesdell the interest he acquired under the Ogilvie mortgage. Upon this point there is a material conflict between his affidavit and those offered on the other side. A. Hyatt Smith testifies that *Bennett* represented to him that he had purchased at both sales, and had accepted both deeds, and conveyed to Truesdell the whole property, with the one thousand square inches of water; and that on the strength of that statement he loaned Truesdell money secured by a mortgage on the property. Tallman testifies that he delivered the deed to Truesdell, he representing at the time that he was acting for *Bennett.* This is contradicted by Truesdell. But we think the admitted acts of the parties serve to corroborate the statements of Smith and Tallman, and to render those of Truesdell exceedingly improbable. In the first place it is evident that Truesdell intended to acquire the right to the one thousand square inches of water, for he mortgaged the whole to Smith. This fact alone strongly corroborates the idea that it must have been represented to Smith at the negotiation of the loan, that Truesdell's title to the whole was complete. Truesdell must have known that he could only have acquired title to the six hundred square inches of water covered by the Atkinson mortgage and not by the other, through the sale upon that mortgage. We accordingly find the commissioner's deed to *Bennett* on record, and, what is a most significant fact, it was received for record, as appears by the affidavits, at the same moment with the deed from *Bennett* to Truesdell, and recorded immediately preceding it. Taken in connection with the fact that he had an interest in obtaining it, and that all his acts upon the subject were consistent with the idea that he intended to acquire, and had acquired, the title conveyed by that deed, this circumstance seems to leave no room for doubt that Tallman's statement that he delivered the deed to Truesdell is true, and that it was put upon record by Truesdell.

It may be that *Bennett,* acting for Truesdell in making the bids, trusted the subsequent transactions mostly to Truesdell,

without paying sufficient attention to them to understand all the details. But we can have no doubt, from the whole evidence, that the commissioner's deed was delivered by Tallman to Truesdell, and that although *Bennett* may not have fully reflected upon the effect of it, yet he must have been aware of the fact that it was done in pursuance of an arrangement between Tallman and Truesdell, and for the purpose of vesting in Truesdell the entire title conveyed at the two sales. The application in this suit is made by *Hamilton Richardson* to compel *Bennett* to pay in the surplus, after satisfying the amount due to Atkinson, which was satisfied by the arrangement between Truesdell and Tallman.

The court below refused both applications upon the ground that it had no power to enforce the orders if made. Independent of this reason, we think the applicants were entitled to the orders. The fact that *Bennett* was bidding for the benefit of Truesdell, cannot be set up by him to affect the rights of other parties. That is a matter that he must arrange with Truesdell. It would be productive of great uncertainty and injustice in these sales, if a party could come and bid upon a private understanding between him and another, and then set up that to release himself from his contract.

We think also that the weight of evidence is decidedly in favor of the conclusion that he assented to the delivery of the commissioner's deed for the purpos³ of vesting in Truesdell the title conveyed at the Atkinson sale. And certainly it would operate as a fraud upon all ¨he parties interested in the property, to allow him, after having secured the title at the Ogilvie sale, to repudiate his bid at the other. It must be assumed that those parties interested failed to protect themselves, relying on his bid. They allowed him to bid at the Ogilvie sale, and take the property for the amount due on that mortgage, because he had previously bid $3,500 subject to the payment of the Ogilvie mortgage. To allow him then, after bidding it off at the Ogilvie sale, after thus lulling the parties into inaction by his previous bid, to then repudiate it, would operate most unjustly upon their rights, and ought not to be tolerated. And we do not

think even that a technical defect in acquiring jurisdiction over a portion of the parties in the Atkinson suit, ought to avail him as any defense against this application, for the reason that his title was good under the Ogilvie sale, and a good title was all he could ask. And the two sales, under the peculiar circumstances, were so connected together, that after getting a good title under one, which he secured undoubtedly by virtue of his bid at the other, he ought not to be allowed to repudiate the other on account of a mere technical defect, which could, under the circumstances, have no effect upon his title. As to the claim that the instalment assigned to *William Richardson*, was really paid by *Hamilton*, out of the funds of Richardson & Truesdell, it is not supported by the evidence, and we must take the decree upon that subject to be conclusive. Nor do we think the reason given by the court below for refusing the orders is sufficient. The authorities establish that a purchaser, by bidding at such sales, becomes a *quasi* party to the proceeding, and subjects himself to the jurisdiction of the court. And it would be strange if it were not so—if a man might bid, and then abandon it at pleasure, and thus baffle wantonly the execution of judgments. We shall not attempt to determine now what measures should be resorted to to compel an obedience to the orders, or whether there are any that can ; but we think the court should go as far as its power extends and make the proper order, and if there are then no means of enforcing it, it will be a defect in the law upon that subject.

The order appealed from must in each case be reversed, with costs, and the cause remanded with directions to enter an order in each, that the purchaser pay into court the amount of his bid remaining unpaid.

After the time limited by rule of court for making a motion for a rehearing had expired, and the cases had been remitted to the circuit court, an application was made to extend the time for making motions for a rehearing in these cases, and was overruled in the following opinion :

*By the Court*, PAINE, J. After the decision of this court

in the above cases, no motion for a rehearing was made within the time prescribed by the rule; and after the expiration of that time, the cases were regularly remitted to the circuit court. Subsequently leave was granted extending the time to file motions for a rehearing, subject however to the opinion of the court whether such motions could be entertained after the cases had' been régularly remitted. We now think they cannot, for the reason that the cases are no longer pending here. Having been properly remitted to the circuit court, the questions involved are no longer before us; and we know of no way to get the cases here again, unless possibly it should be done by the consent of the parties, by setting aside the *remittitur* and returning the record. When cases have been once decided here, and regularly remitted after the time to move for a rehearing has expired, the function of this court with respect to those cases is exhausted. If we should entertain these motions now, we see no reason why it might not be done at any indefinite time hereafter; and thus parties could never know when their cases were determined.

For these reasons the motions are denied, with costs.