### SAGE v. MEMPHIS & L. R. R. Co.[1]

*(Circuit Court, E. D. Arkansas. December 1, 1883.)*

RECEIVER—DISCHARGE BY COURT OF ITS OWN MOTION.

A court of equity will not conduct the business of a corporation through a receiver unless the interest of creditors unmistakably requires it; and when a railroad company, by collusion with a creditor who prays for the appointment of a receiver, allows its property to go into a receiver's hands, not for the purpose of meeting its obligation to the petitioning creditor, but for the purpose of keeping its property from other creditors, the court which appointed the receiver will, upon information of the facts, discharge him of its own motion.

In Chancery.

Prior to the removal of this cause from the state court a receiver had been appointed and placed in charge of the railroad property and franchises of the defendant corporation. The case came before the court upon the application of Robert K. Dow and John L. Farwell, stockholders of the defendant corporation, to be made parties, and to be allowed to file answers and cross-bills, which are tendered. Upon

[1] Reversed. See 8 Sup. Ct. Rep. 887.

the argument of this motion the court requested counsel to discuss the question whether the court should not of its own motion, upon the facts appearing in the record, order the receiver to pass his accounts before the master, to the end that he may be discharged, and the court be relieved from the duty of conducting through a receiver the business of the defendant corporation. This question has accordingly been discussed by counsel for the plaintiff, but the counsel for the said Dow and Farwell declined to argue it, upon the ground that the parties represented by them were not interested therein.

The facts are as follows:

(1) This suit was originally instituted in the chancery court of Pulaski county, Arkansas, for the purpose of obtaining the appointment of a receiver to take possession of and operate the railroad and other property of the defendant; and upon presentation of a bill of complaint to that court on the twenty-fourth day of June, 1882, one E. K. Sibley was appointed such receiver and placed in possession of the property. The defendant waived notice, appeared at the hearing, and consented to the appointment.

(2) The bill alleges, as ground for the appointment of a receiver, that plaintiff had recovered judgment in the circuit court of the United States for the eastern district of Arkansas for $125,921.13. By reference to the transcript of the judgment, it appears that it was rendered by confession upon the same day the application for appointment of a receiver was made. The bill also alleges that the defendant's property consists of a railroad running through the counties of Pulaski, Lonoke, Prairie, Monroe, St. Francis, and Crittenden, together with cars, rolling stock, and other property used in the management and operation of the road. It sets out the existence or two mortgages upon the property of the defendant,—one dated May 1, 1877, to secure bonds amounting to $250,000, maturing in installments of $50,000 each, due May 1st, in the years 1879 to 1883, inclusive; and the other to secure bonds to the amount of $2,600,000, payable July 1, 1907, bearing interest after July 1, 1882, at 8 per cent. per annum, and having interest coupons attached. The bill further alleges that the aggregate amount of the bonds secured by said mortgages exceeds the salable value of the property and franchises of the defendant, or at least greatly exceeds the sum for which the same would sell under the hammer; and complainant believes that no bidder could be found at more than nominal amounts for said property, by reason of the existence of said mortgages. And a large part of the debt secured by the first mortgage being due and unpaid, it is alleged that the trustees in the mortgage could and would prevent the sale under execution of any part of said property, if plaintiff should attempt to enforce payment of his judgment by execution, and therefore to sue out an execution would be to incur useless expense; that if said property is kept together and operated, it will produce a large income, sufficient to pay operating expenses and a large surplus each year; that defendant has hitherto failed to apply its surplus income to the payment of complainant's debt, and unless prevented it will continue to so refuse, etc.

(3) Soon after his appointment the receiver filed in said chancery court an inventory of the property turned over to him by virtue of his office.

(4) October 14, 1882, John L. Farwell filed petition to be made a party defendant, alleging that he is a stockholder of defendant, owning 17½ shares of the capital stock, and presenting an answer and cross-bill alleging that the plaintiff's judgment was confessed by defendant company for no other purpose than as a preliminary step to the application to this court for a receiver, in order to hinder the prosecution of a certain suit by R. K. Dow, Watson Matthews, and Charles Moran, theretofore instituted in the circuit court of the

United States to enforce a claim against the railroad for about $250,000, and to enable plaintiff and others interested with him to depreciate the market value of the bonds issued by defendant, and to depreciate the stock. It is alleged that the suit is a sham and a mere financial expedient, with no other object than to make a successful speculation in the stock and securities of the railroad company; that there is no antagonism either of feeling or interest between the plaintiff and defendant, but they have caused this suit to be brought and maintained in collusion with each other for a common purpose, etc., and numerous other allegations of like tenor and effect.

(5) November 1, 1882, the receiver reported to the chancery court that since his appointment he had received $326,049.76, and paid out $283,943.73, leaving balance on hand $42,106.03; also that the debts outstanding, for labor, materials, supplies, etc., amounted to $62,000. He reports that he has expended the money received for the benefit of the property, but nothing is said about the application of any part of it to the payment of plaintiff's judgment. He submits an engineer's statement showing that an expenditure of $570,605 is necessary to put the road in repair, and he adds that $100,000 is required for rolling stock and motive power.

(6) November 10, 1882, cause removed to this court.

(7) After the removal, and on the ninth of April, 1883, the receiver filed a report in this court asking for an appropriation of $631,930 for repairs, which sum, he says, is within the actual wants of the company; and he adds: "After spending the amounts given in this statement, we will only have the tracks, bridges, and wharf-boat, rolling stock, and motive power in a safe condition to operate. You will note no provision is made for raising the roadbed east of Madison above high water, which, sooner or later, must be done to prevent the trade and traffic being stopped during the overflows of the Mississippi river and tributary streams."

(8) At the same time the receiver filed a statement showing that the earnings of the road from June 25 to December 31, 1882, were $478,425.47, and that the expenditures for the same period amounted to $456,200.92, leaving as net earnings $22,224.55; also a statement for the month of February, 1883, showing receipts $73,449,60 and expenditures $102,889.63.

(9) The last report of the receiver, filed the same day, shows:

Cash on hand June 24, 1882, the date of his appointment,   $31,957 76
Cash received from June 25, 1882, to March 31, 1883, inclusive, 854,815 62

| | |
|---|---:|
| Total | $886,773 38 |
| Expenditures, | 838,395 80 |
| Balance on hand, | $48,377 58 |

*Mr. Cockrell,* for complainants.

*B. C. Brown,* for railroad company.

*U. M. & G. B. Rose,* for stockholders.

McCrary, J. The ostensible purpose of the complainant in applying for the appointment of a receiver in this case was to compel the defendant company to apply a part of its earnings to the payment of his judgment. It now sufficiently appears that this was not the real purpose. The process of the court has not been used in good faith to collect complainant's judgment, but as a means of placing the property and business of the defendant railroad company in the hands of the court to be managed through a receiver, to the end that the defendant may not be subject to suits in the ordinary course of ju-

dicial proceedings, and in order to enable the plaintiff and defendant, by agreement between them, through the receiver to apply all the earnings of the road during a series of years to the improvement and betterment of the property. In pursuance of this purpose the receiver, during the period of about nine months preceding his last report, had collected $886,773.38, and had expended $838,395.80 without applying a dollar toward the extinguishment of the complainant's judgment. And so far from proposing to pay the judgment or any part of it, he asks, in his report of April 9, 1883, for an appropriation of $631,930 for repairs.

It is also apparent that this is not an adversary proceeding, but one in which the parties complainant and defendant have acted and are still acting in concert. The complainant's judgment was rendered by consent, and on the *same* day the receiver was appointed without opposition, the defendant voluntarily appearing and waiving service of process. The receiver has acted in accordance with the wishes of both parties, and it is undoubtedly with the assent of complainant that he has made no effort to pay the judgment, or any part of it, out of the earnings of the road. In short, the complainant and defendant have sought to make use of this court as an instrument to carry on, through the hands of a receiver, the important business of the defendant corporation; and this, not for the purpose, in good faith, of enforcing the confessed judgment set out in the bill, but for the purpose of protecting the property of defendant from seizure upon legal process, while the earnings are being applied to the improvement of the road. In other words, the court is asked to stand between the company and its creditors, while the company is engaged in using the earnings, not to pay its debts, but to improve its property.

It is said that this policy is best for the company and its creditors. Whether this be so or not is for the company and its creditors to determine; it is not for the court to engage in the operation of a railroad through a receiver, because the interests of the parties concerned may be thereby advanced. It does not appear that any suit has been commenced to foreclose either of the mortgages upon the road. As to other and smaller debts, no good reason is seen why they should not be either paid or enforced by the ordinary judicial proceedings. As to the complainant's judgment, it might have been paid in full from the earnings before this date, if such had been the purpose of this proceeding, and if complainant had insisted upon it. We cannot be expected to continue the receivership under such circumstances. The views of this court upon this subject are well expressed in the opinion of CALDWELL, J., in the case of *Overton* v. *Memphis & L. R. R. Co.* 10 FED. REP. 866, as follows:

"Undoubtedly there are cases in which a court of equity may, through its receiver, take possession and control of the property and business of corporations and individuals. But it is a jurisdiction to be sparingly exercised.

None of the prerogatives of a court of equity have been pushed to such extreme limits as this, and there is none as likely to lead to abuses. It is not the province of a court of equity to take possession of the property and conduct the business of corporations or individuals except where the exercise of such extraordinary jurisdiction is indispensably necessary to save or protect some clear right of a suitor, which would otherwise be lost or greatly endangered, and which cannot be saved or protected by any other action or mode of proceeding. If, as in this case, the loss or danger can be averted by the lawful action of the suitor, or those he represents, he cannot successfully invoke the exercise of the extraordinary powers of a court of equity because that course would be more agreeable or convenient."

The order will be, that the receiver pass his accounts before the master with a view to his final discharge at an early date.

---

After the preparation of the foregoing opinion and order, but before it was filed, the court was asked to hear and consider further argument, and to delay action, which request was granted. Additional and very elaborate arguments were filed, but upon considering them, we found nothing to change our views as above expressed. Before announcing our conclusion, the writer of this opinion was presented with a written argument by counsel in the case, stipulating that the receiver should be discharged upon filing the receipt of the railroad company for the balance in his hands. An order of this character was signed under the impression that all the parties in interest had consented thereto. This impression may have been correct, but it is insisted by certain parties, who claim the right to be heard, that they did not consent, and that they now desire to be heard to object. They are understood to be judgment creditors who had applied for leave to intervene, and whose application was and is still pending. Although these persons were not technically parties to the record, they have at least the right to be heard upon their application to intervene, and to have that application formally passed upon before the receiver should be discharged in any irregular or unusual way. And it may well be that the court should hear their objection to this mode of discharge, upon the ground that they have an interest in the question as judgment creditors of the defendant. At all events, it would be improper, while these parties thus situated are objecting, to release the receiver from the duty of passing his accounts before the master.

The court can adhere to the order signed as above stated, only upon being clearly satisfied that it was in accordance with the desire of all who have any, even the slightest, interest in the matter. That order will therefore be set aside; and the court, of its own motion, *and not acting* upon the stipulation of counsel, directs that the order be as directed in the foregoing opinion, to-wit, that the receiver pass his accounts before the master, with a view to his discharge at an early day. The court adds that counsel have acted in good faith

in presenting the argument, and in representing that it was signed for all the parties. That is strictly true, but it is also true that the order was signed under the impression that the application for leave to intervene by certain judgment creditors had been overruled, and was therefore not still pending.