## Dolph v. Troy Laundry Machinery Co.

*(Circuit Court, N. D. New York.   1886.)*

1. **Contract—Validity— Restraint of Trade—Combination of Manufacturers.**

   A contract, under which two rival manufacturers agreed upon a scale of selling prices for their goods, one of them discontinuing his business, and becoming a partner with the other for a specified term, is not void, as in restraint of trade: provided, the goods manufactured were not articles of necessity, and the transaction did not amount to a conspiracy between the parties to control prices by creating a monopoly.[1]

2. **Damages—Measure of—Future Delivery of Personal Property—Contract Price and Market Price.**

   The true rule of damages for the breach of an agreement to sell and deliver personal property at a future day is the difference between the contract price and the market value of the property at the time of delivery called for by the contract. It is immaterial whether the article to be delivered is or is not in existence at the time of the contract, or whether it is one to be manufactured from time to time, as required.

[1]See note at end of case.

**3. SAME—CONTRACT PRICE AND COST PRICE—MARKET VALUE.**

Indemnity for the breach of such a contract includes the plaintiff's actual and also his prospective loss; but this is not necessarily measured by the difference between the contract price and the cost of the articles to himself if he had manufactured them. When, from the nature of the article, there is no market for it, and no way of ascertaining market value, the plaintiff should recover, as his prospective loss, the difference between the contract price and the reasonable cost of producing the article.

**4. SAME—THING TO BE SUPPLIED NOT MANUFACTURED EXCLUSIVELY BY PLAINTIFF.**

Where a contract provided that plaintiff was to have the privilege of supplying the defendant with certain machines at the lowest price bid by other manufacturers for supplying defendant with the same, the plaintiff is not entitled to damages for breach by defendant, unless it is shown that there is some usual or average percentage of profit customarily realized by manufacturers of analogous articles, or some established manufacturers' price.

Motion for New Trial. The opinion states the facts.

*Geo. L. Steadman,* for plaintiff.

*E. Cowen, Jr.,* for defendant.

WALLACE, J. The motion by the defendant for a new trial raises the questions whether the contract in suit was void as one in restraint of trade, and whether the correct rule of damages was given by the judge in his instructions to the jury. The facts, so far as they are necessary to the consideration of these questions, may be briefly stated. The parties were competitors in the business of manufacturing and selling washing-machines throughout the United States, the plaintiff's place of business being at Cincinnati and the defendant's at Troy. They were the principal, but not the only, manufacturers in this country. In January, 1882, in order to obviate the consequences of competition with each other, and secure better prices and better profits, they entered into an agreement to divide the profits on all sales made by each, upon the basis of a fixed manufacturers' price and selling price upon machines, during the term of five years. Among other things, by the terms of the contract, (1) the plaintiff promised to deliver to the defendant such "Dolph Standard" machines as the latter should order, from time to time, at the price of $110 each, and the defendant promised to take at least 50 of such machines in each year; and (2) the plaintiff was to have the option of manufacturing all machines sold by both parties, at the price of $110 each for the "Dolph Standard" machine, and at such prices for other machines as might be bid for them in open competition by any other responsible manufacturer for equal quality of goods. After the parties had proceeded under the contract for one year, the defendant terminated it by notice to the plaintiff. During the remaining four years of the contract both parties sold many of the "Dolph Standard" machines at prices ranging from $110 to $175 each. During these years the plaintiff was ready and willing to comply with the provisions of the contract. The evidence was that during these four years the plaintiff could have manufactured the machines at a cost to himself of from

$45 to $92.50 each; and the price paid by defendant to other manu-facturers, and the cost of manufacturing them when made by the defendant, was about $105 each.

The judge denied an instruction, requested for the defendant, that the contract was void, as being one in restraint of trade. Upon the question of damages, he instructed the jury that the plaintiff was entitled to recover what he would have realized had the contract been performed, taking into consideration what he would have made in the future if he had been permitted to carry it out, as well gains prevented as losses sustained, provided they were certain, and such as naturally followed from the breach of the contract. Referring to the 50 Dolph Standard washers which the defendant had agreed to take for each of the four remaining years of the contract, he instructed the jury that the plaintiff was at all times ready and willing to furnish these machines. and could have done so at a cost to himself varying from $45 to $92.50 each, and by doing so would have made a profit consisting of the difference between the cost and $110, the contract price. Respecting the other machines, he instructed the jury that the plaintiff was entitled to recover the difference between the price the defendant paid other manufacturers for such machines, or the cost of the machines to the defendant when manufactured by itself, and the sum for which the plaintiff could have manufactured them. He refused to instruct the jury, as requested by the defendant, that the rule of damages was the difference between the contract price and the market value of the machines at the times at which they were to have been delivered. Exceptions were taken by the defendant to the instructions given, and to the refusal to instruct as requested.

Assuming that, in entering into the contract, the parties contemplated that the defendant should cease manufacturing machines, and buy all its machines from the plaintiff, and that the only purpose in view was to promote the interests of the parties, and enable them to obtain from customers higher prices for the machines, it is not obvious how such a contract contravenes any principle of public policy. Washing-machines, although articles of convenience, are not articles of necessity. The scheme of the parties did not contemplate suppressing the manufacture or sale of machines by others. Those who might be unwilling to pay the prices asked by the parties could find plenty of mechanics to make such machines, and the law of demand and supply would effectually counteract any serious mischief likely to arise from the attempt of the parties to get exorbitant prices for their machines. It is quite legitimate for any trader to obtain the highest price he can for any commodity in which he deals. It is equally legitimate for two rival manufacturers or traders to agree upon a scale of selling prices for their goods, and a division of their profits. It is not obnoxious to good morals, or to the rights of the public, that two rival traders agree to consolidate their concerns, and that one shall discontinue business, and become a partner with the

other, for a specified term. It may happen, as the result of such an arrangement, that the public have to pay more for the commodities in which the parties deal; but the public are not obliged to buy of them. Certainly, the public have no right to complain, so long as the transaction falls short of a conspiracy between the parties to control prices by creating a monopoly. It is hardly necessary to cite authority in support of these propositions, but, if any is needed, enough will be found in the opinions in the cases of *Jones* v. *Lees*, 1 Hurl. & N. 189; *Ainsworth* v. *Bentley*, 14 Wkly. Rep. 630; *Marsh* v. *Russell*, 66 N. Y. 292; and *Perkins* v. *Lyman*, 9 Mass. 522. As is stated by Mr. Pollock, (Prin. Cont.:)

"Public policy requires on the one hand that a man shall not, by contract, deprive himself or the state of his labor, skill, or talent; and on the other hand that he shall be able to preclude himself from competing with particular persons, so far as necessary to obtain the best price for his business or knowledge when he chooses to sell it."

Upon the question of damages, the effect of the instructions given, and those refused, was to direct the jury that the measure of damages for the breach of the contract was the difference between the contract price and the price which it would have cost the plaintiff to make and deliver the machines, irrespective of the market value of the machines during the period of the contract. The general instruction with which the judge prefaced his directions to the jury, that the plaintiff was entitled to recover as damages what he would have realized had the contract been performed, including as well gains prevented as losses sustained, was undoubtedly a correct statement of the law. One of the most recent cases in which it was reiterated is *U. S.* v. *Behan*, 110 U. S. 338; S. C. 4 Sup. Ct. Rep. 81. It was there held that where one party enters upon the performance of a contract, and incurs expense therein, and, being willing to perform, is, without fault of his own, prevented by the other party from performing, his loss will consist of two distinct items of damages: *First*, his outlay and expenses, less the value of materials on hand; and, *secondly*, the profits he might have realized by performance. In applying this rule to the facts of the particular case, the courts have sometimes used language which is liable to misconception, if understood to be the rule which ordinarily applies in the case of a contract for the future delivery of articles which have a market value. Thus, in the leading case of *Masterton* v. *The Mayor*, 7 Hill, 69, the language of the syllabus is:

"The measure of damages in respect to so much of the contract as remains wholly unperformed is the difference between what the performance would have cost the plaintiff and the price which the defendant agreed to pay."

See, also, the language of Curtis, J., in *Philadelphia, W. & B. R. Co.* v. *Howard*, 13 How. 344.

The error of the instructions in the present case consists in adopting these expressions literally, and applying them to a case where the

difference between the cost price and the contract price would exceed the plaintiff's actual prospective loss, and allow him more than complete indemnity for the breach of the contract by the defendant. In the cases where damages have been sanctioned upon the basis of the difference between the contract price and the actual cost to the plaintiff of performance of the contract, there was no other criterion for ascertaining the extent of the plaintiff's prospective loss. Thus, in *Masterton* v. *The Mayor* the contract was for furnishing marble, cut, fitted, and prepared for a particular building, and in *Story* v. *New York & H. R. R. Co.*, 6 N. Y. 85, the contract was for building the roadway of a railroad; and it is to be observed that in both of these cases the cost of performing the contract which was allowed as the basis of damages was not the cost to the plaintiff personally, but the reasonable cost of doing what was done by him, and he was not allowed to recover the difference between the contract price and subcontracts made by him with others for doing the same work. In *Elbinger* v. *Armstrong*, L. R. 9 Q. B. 473, the court say: "When, from the nature of the article, there is no market in which it can be obtained, this rule [the difference between the contract and market value] is not applicable."

The well-settled rule of damages for the breach of an agreement to sell and deliver personal property at a future day is the difference between the contract price and the market value of the property at the time of the delivery called for by the contract. It is quite immaterial whether the article to be delivered is or is not in existence at the time of the contract, or whether it is one to be manufactured, from time to time, as required. This is specifically pointed out in *Masterton* v. *The Mayor*, where BEARDSLEY, J., says:

"In reason and justice, there can be no difference between damages which should be recovered for the breach of an ordinary agreement to buy or sell goods and one to procure materials, fit them for use, and deliver them in a finished state, at a stipulated price."

In *Rhodes* v. *Cleveland Rolling-mill Co.*, 17 Fed. Rep. 426, the contract was for the delivery of pig-metal, to be manufactured, and, the defendant having refused to proceed with the contract, it was held that the plaintiff's damages, ordinarily, would be the difference between the market price and the contract price at the time defendant refused to go on with the contract; but that plaintiff having tendered the iron after notice that the defendant would not accept, and the price having advanced between the time of notice and the time of the tender, the plaintiff could only recover the difference between the contract price and the price at the time of the tender. See, also, *McNaughter* v. *Cassally*, 4 McLean, 531.

The plaintiff certainly was not entitled to a larger recovery than he would have been entitled to if he had built all the machines which might have been required to carry out the contract. He might then have stored or retained them for the defendant, and sued for the con-

tract price; but if he did not choose to do this, and elected to sue for breach of contract to accept them, and, having the machines on hand, could have sold them, and realized a larger price than the actual cost of manufacture to himself, it would have been his duty to do so, and his recovery would have been the difference between what he could have realized upon sales and the contract price. The party who is exposed to loss by the violation of the contract by another party must exert himself to make the damages as light as possible; the law imposes this active duty upon him. *Costigan* v. *Mohawk & H. R. Co.*, 2 Denio, 609; *Hamilton* v. *McPherson*, 28 N. Y. 72; *Dillon* v. *Anderson*, 43 N. Y. 231; *Warren* v. *Stoddart*, 105 U. S. 229. Good faith and good logic require that he be confined to a recovery of those damages only which arise from the fault of the other party.

What has been said has reference to the instructions respecting the damages recoverable by the plaintiff for the breach of that part of the contract relating to the "Dolph Standard" machines. It is apparent that, under the instructions given, the jury may have awarded the plaintiff damages in excess of the difference between the market price or value of the machines at the time when their acceptance was called for under the contract and the contract price. The evidence that both the plaintiff and defendant were selling the machines in open market during the whole term of the contract, and the prices at which the machines were sold, authorized the jury to fix the market value. As to the damages recoverable for the breach of that provision of the contract by which the plaintiff was to have the privilege of supplying the defendant with other washing-machines at the lowest price bid by other manufacturers for supplying defendant with the same, it is not clear that the plaintiff could establish any loss of profits, unless it could be shown that there is some usual or average percentage of profit customarily realized by manufacturers of analogous articles, or some established manufacturers' price. The plaintiff might have been unwilling to act upon the option at prices which other manufacturers would have offered, and the extent of his prospective loss, if any, is largely a matter of speculation. The defendant may have been so situated that it could better afford to employ its own men and facilities, even although by doing so its machines would cost it more than to buy them of others, and in this view the difference between the actual cost of the machines to the defendant, and the sum it would have cost the plaintiff to make and furnish them, might not be the correct rule of damages. In any view, the jury were unduly restricted by the direction that the plaintiff was entitled to recover as his loss under this provision of the contract the difference between what it cost the defendant to build them and what the plaintiff could have built them for. At most, the cost to the defendant was only evidence to be considered with the other evidence of the ordinary manufacturers' price for such machines.

For these reasons it must be held that the instructions to the jury on the ·question of damages were erroneous, and prejudicial to the defendant. A new trial is granted.

NOTE.

See W. U. Tel. Co. v. Burlington & S. W. Ry. Co., 11 Fed. Rep. 1, and note, 10–14, and Sharp v. Whiteside, 19 Fed. Rep. 156, and note, 164–173, for an exhaustive discussion of the validity of contracts binding parties not to do business in particular districts, or to sell to or labor for certain parties only. See, also, McCaull v. Braham, 16 Fed. Rep. 37, and note, 42–49, as to the development of the modern doctrine in regard to the enforcement of contracts of the latter class by injunction.

In Bickford v. Davis, 11 Fed. Rep. 549, specific performance of a contract to make peg-wood for plaintiff exclusively, was denied on the ground that it was a proper case for damages at law, and because of other circumstances that rendered specific performance inequitable.

In Iowa contracts have been upheld "not to practice law" in a certain city, Smalley v. Greene, 3 N. W. Rep. 78; "not to practice medicine" in a certain place, Haldeman v. Simonton, 7 N. W. Rep. 493; "not to do blacksmithing" in a certain locality, Stafford v. Shortreed, 17 N. W. Rep. 756; and "not to sell to any one but plaintiff, within two miles, for a period of five years," Arnold v. Kreutzer, 25 N. W. Rep. 139. In Michigan the court enforced by injunction a contract never to engage in a specified line of business at Bay City, nor to use nor permit the use of the name "Little Jake," under which the business was established. Grow v. Seligman, 11 N. W. Rep. 404. A contract giving one party the exclusive sale in a certain place of all brick manufactured by another during the season of 1883 was construed in Norris v. Clarke, (Minn.) 24 N. W. Rep. 128.