[No. 2167.]

KINCAID ET AL. V. PRICE ET AL.                    18      73
                                                   38S    253

**Sales—Breach of Contract to Buy—Measure of Damage—Market Price—Cost of Production—Instructions.**

In an action for damages for breach of contract to purchase the output of a coal mine, if the output of the mine could have been sold in the market at a price above the cost of production

the measure of plaintiff's damage would be the difference between the price agreed to be paid by defendant and the market price. And in the absence of a showing that there was no market value, an instruction that the measure of damage was the difference between the contract price and the cost of producing the coal named in the contract was erroneous.

*Appeal from the District Court of Fremont County.*

. Mr. CHARLES E. WALDO and Mr. CLYDE C. DAWSON, for appellants.

' Mr. A. MACON and Mr. Jos. H. MAUPIN, for appellees.

GUNTER, J.

Plaintiffs agreed to sell and deliver defendants the output—with an immaterial exception—of their coal mine, which defendants were to accept and pay for at a stipulated price; the coal to be merchantable lump and nut; contract to run for two years. The gist of the contract was, plaintiffs to sell and deliver and defendants to accept and pay for certain coal. After receiving coal about four months defendants declined to take further. Plaintiffs claimed a breach of the contract and sued for damages. Defendants, among other defenses, denied that plaintiffs had sustained damage. Verdict and judgment were for plaintiffs. Defendants appealed. On trial this instruction was given:

"If the jury shall find in this case a verdict in favor of the plaintiffs, the measure of their damages is the amount of coal of the quality and character provided for in the contract which they were able, ready and willing to produce and furnish to the defendants during the term of the existence of said contract, operating their mine in the ordinary and usual way in which properties of that sort are commonly operated, over and above enough such coal to supply the demand of the local market, also over and

above the amount of such coal which plaintiffs did or might with the exercise of reasonable good faith and diligence have sold to other parties at a price equal to that named in the contract.

"If under this instruction you shall find that the plaintiffs were thus able, ready and willing to furnish any amount of coal under the contract to the defendants, the difference between the contract price therefor and the cost of producing the same, that is, the cost of producing the particular coal which was to be furnished under the contract, will be the measure of damages which the plaintiffs have sustained, if any, by reason of the defendants' violation of the contract herein sued upon."

Defendants (appellants) contend that the general rule for measuring damages in actions therefor upon breach of an executory contract—as this—is the difference between the market value of the article contracted to be delivered and the price agreed to be paid therefor; that to justify another rule it should appear from the evidence that the article covered by the contract had no market value; that in this case the court erred in assuming that the article in question had no market value, and in departing the general rule for measuring damages in like cases.

It is, and ought to be, the intent of the law in cases such as this to indemnify the parties injured for damages sustained by the breach, but this should be done without unnecessary prejudice to defendants. Further, it is the duty of the party injured to make every reasonable effort to avert damage from the breach.

"The statement that the fundamental principle of the law of damages is complete compensation to the party injured seems to ignore, in terms at least, just consideration of the rights of the party sought to be held responsible for the damages suffered. It has

been declared, however, that the rules of law respecting the recovery of damages must be applied with reference to the just rights of both parties—not merely what it might be right for an injured party to receive to afford compensation for his injury, but also what it is just to compel the other party to pay.''—8 Am. and Eng. Ency. of Law, 2d ed., 546.

''As has already been seen, compensation is the basic principle of the law of damages, the measure thereof being limited and controlled and the elements of recovery primarily determined by this fundamental consideration. All the rules which have been laid down and applied by the courts in this connection have been formulated and adopted with the view of compensating in money a party injured by the wrong of another, as fully as a just consideration of the rights of the latter will permit.''—8 Am. and Eng. Ency. of Law, 2d ed. 627, 632.

''The party who is exposed to loss by the violation of the contract by another party must exert himself to make the damages as light as possible; the law imposes this active duty upon him.''—*Dolph v. Troy Laundry Machinery Co.*, 28 Fed. 553, 558.

''The law imposes upon the party injured by another's breach of contract, or tort, the active duty of using all ordinary care and making all reasonable exertions to render the injury as light as possible.''—Sutherland on Damages, vol. 1, 2d ed., § 88; Id., vol. 2, § 648.

''It is the market price, when there is one, at the date of the breach, which governs in the estimate of damages.''—Sutherland on Damages, vol. 2, § 652.

''Where the general rule concerning the market price applies the jury cannot give damages in excess of it. * * * ''—Sutherland on Damages, *supra*.

If the plaintiffs in the present case by making

a reasonable effort could have sold the output of their mine in the market at a price above the cost of production then they sustained no greater damages than the difference between such market price and the price at which defendants contracted to take the coal, and no greater damages should have been awarded them. By the application of such a rule to the damages recoverable by plaintiffs herein they would have been fully compensated for the loss through the breach of the contract by defendants, and yet have imposed upon defendants no unnecessary burden. Such should have been the rule given by the trial court for measuring the alleged damages of plaintiffs unless it appeared from the evidence that the coal contracted for had no market value. Whether it had such value was a question of fact for the jury. The rule laid down by the trial court, while it might work full compensation to plaintiffs, might do more, and in doing so impose an unnecessary burden upon defendants—that is, cause them to pay more than was necessary to compensate plaintiffs for the loss. The court charged the jury that plaintiffs should recover the difference between the cost of production of the coal and the price at which the defendants agreed to take it. There was evidence that this difference was about 66 cents per ton; there was evidence that the coal could have been sold in open market about 25 cents above its cost of production. If such facts were true plaintiffs could have saved themselves 25 cents per ton of the damages sustained through the breach of the contract, and have saved defendants in like amount. If they could have done so their alleged damages should have been abated accordingly. Under the instruction given plaintiffs could have recovered from defendants the difference between the cost of production and the contract price of the coal, and as the plaintiffs re-

tained the coal they could thereafter mine and sell
the same at 25 cents per ton more than the cost of
production, and thus through their judgment and
the proceeds of the sale of the coal be more than
compensated for the damages sustained by the breach
of the contract. Such is not the intent of the law.

Before the court in this case laid down any other
rule for the measure of damages than the difference
between the contract price and the market value at
the time of the breach, it should have appeared from
the evidence that there was no market value. This
reasonable conclusion is sustained by the authorities.
In *Todd v. Gamble,* 74 N. Y. Sup. Ct. Rep. 38, plain-
tiffs, engaged in the manufacture of silicate of soda,
contracted to sell defendants, and defendants agreed
to receive and pay for, all the silicate of soda which
defendants should use in their business. Defend-
ants declined to receive the soda; plaintiffs sued for
damages. Therein the court said:

"In this case the court ruled that the measure
of the defendant's liability was the difference be-
tween the contract price and the cost of production,
* * * The defendants requested the court to rule
and charge that the burden was on the plaintiffs to
show that the silicate of soda had no market value be-
fore evidence of the cost of production could be re-
ceived or considered by the jury, which was also
refused and an exception taken. * * * The bur-
den was on plaintiffs to show that the article had no
market value, and under the state of the evidence dis-
closed by the record, whether it had or had not such a
value, was a question of fact for the jury, and not one
of law for the court. In *New York and Maine Granite
Paving Company v. Howell* (7 N. Y. St. Rep. 494)
damages were sought to be recovered from a vendee
for refusing to accept paving granite. The plaintiffs
insisted that the actual value of the goods was to be

ascertained by proving the cost of production, while the defendants contended that their market value was proof of actual value. The trial court held, as a matter of law, that the granite had no market value, and refused to submit that question as one of fact to the jury, which was held to be error.''

This case was again considered in 84 N. Y. Sup. Ct. Rep. 569, and in 148 N. Y. 382. The doctrine, however, announced in 74 N. Y. Sup. Ct. Rep., *supra,* was modified. See also Benj. on Sales, 7th ed. (Am. Note), p. 793; also *Dolph v. Troy L. M. Co., supra,* wherein it is said:

''The error of the instructions in the present case consists in adopting these expressions literally and applying them to a case where the difference between the cost price and the contract price would exceed the plaintiff's actual prospective loss, and allow him more than complete indemnity for the breach of the contract by the defendant. In the cases where damages have been sanctioned upon the basis of the difference between the contract price and the actual cost to the plaintiff of performance of the contract, there was no other criterion for ascertaining the extent of the plaintiff's prospective loss.''

Where a different rule than the difference between the market value and the contract price has been adopted the article involved has had no market value, and the absence of a market value is the reason announced for departing the general rule. This was true in the leading case of *Masterton v. The Mayor,* 7 Hill 69. See comments thereon in *Dolph v. Troy L. M. Co., supra.*

In *The Silkstone and Dodsworth Coal and Iron Co. v. Joint-Stock Coal Co.,* 35 L. T. N. S. 668, plaintiff contracted to deliver defendant coal. Defendant declined to receive. In an action for damages, as it appeared, there was no market value for that par-

ticular kind of coal at the mouth of the shaft, the place of delivery, the court laid down as a rule for measuring damages the difference between the amount of the expenditure of plaintiff in raising the coal added to the value of the coal had it remained unraised and unsold in the mine, and the contract price per ton which the plaintiff would have received for the coal had the contract been duly performed.

There was no evidence in the present case that the coal involved was without market value; there was positive evidence that it had such value. The court erred in assuming that it had no market value, and in adopting any other rule for measuring the damages than the difference between the contract price and the market value at the time of the breach in the absence of it having been shown and the jury having found that the coal was without market value. If the coal contracted to be delivered was without market value then it was incumbent upon the court to adopt some other rule than the difference between the market value and the contract price for measuring the damages which would compensate plaintiffs for their alleged loss and yet would impose upon defendants no unnecessary burden, observing the requirement that plaintiff should make every reasonable effort to escape injury from the alleged violation of the contract.

The judgment should be reversed.

*Reversed.*