[No. 5208.]
[No. 2819 C. A.].

WATROUS ET AL. v. HILLIARD, RECEIVER, ET AL.

</div>

1.  Judicial Sales—Refusal to Complete Purchase—Liability of
      Bidder.

Where the president of a corporation was a creditor thereof and bid upon its property at a receiver's sale, he was not relieved from liability for refusing to complete the purchase because the later allowance of a claim against the estate, which

had been reduced to judgment and filed for allowance before the sale, would require him to pay more cash than he had contemplated.—P. 263.

2. **Sales—Contract to Purchase—Failure to Comply with Contract—Measure of Damages.**

Where one makes a contract to purchase property at an agreed price and fails to comply with his contract, the measure of damages for the breach is the difference between the contract price and that for which the property may be sold in the open market.—P. 263.

3. **Judicial Sales—Purchaser Becomes Party to Original Proceeding—Compelled to Perform—Motion in Original Cause.**

The purchaser at a judicial sale, by such purchase, becomes a party to the proceedings in which the sale is made; and whoever makes himself a party to the proceedings of a court of general equity jurisdiction and undertakes to do a particular thing under its decretal orders, may be compelled to perform what he has undertaken; and the proper tribunal to compel it is the same court, and by a motion in the same cause in which the undertaking occurred.—P. 263.

4. **Same—Re-sale.**

Where a bidder at a judicial sale fails to pay, the official selling may petition the court in the original cause, if a court of general powers, even without notice to the buyer, because, by the purchase, he is a party and is in the court, and an order of re-sale may be made; and if, at the re-sale, there is a deficiency, the former purchaser is held liable for the difference between his bid and the amount for which the property is sold at the second sale.—P. 264.

5. **Assignments—Rights of Assignee.**

The assignee of a claim against an insolvent corporation takes the rights and liabilities of his assignor.—P. 264.

6. **Judicial Sales—Failure to Complete Purchase—Liability of Purchaser.**

The purchaser of property sold under a decree of a chancery court becomes a quasi party to the cause so far as relates to the rights and duties that properly pertain to his purchase under the decree, and hence, if he fails to pay the purchase price or any part thereof at the time it becomes due, the court may, without notice, take the proper steps, either by execution or otherwise, to see that the matter is paid.—P. 266.

7. **Election of Remedies—Estoppel.**

Where the creditor of a corporation could have moved to set aside the order appointing a receiver on the ground that the

corporation fraudulently procured the appointment to defeat his claim, but instead elected to have his claim allowed against the estate and, if possible, to secure its preference, he cannot afterwards abandon such election and revert to the other.—P. 267.

8.  **Corporations — Insolvency — Receivers—Conspiracy—Priority of Claims.**

Where the receiver of a corporation was appointed at the instance of a director, the corporation consenting thereto and confessing judgment for the amount of the claim of such director, and there is apparent connivance to defeat the collection of another judgment against the corporation and to deprive the creditor who is not a director of his just share of the trust estate, the ends of justice demand that the director's claims shall be postponed until after the payment of the claim of him whom it was sought to defraud.—P. 268.

*Appeal from the District Court of Arapahoe County.*
*Hon. P. L. Palmer, Judge.*

Action by J. J. Watrous against B. C. Hilliard, receiver, John H. Richards, L. M. Kimball and E. W. Wilson, for an order of distribution in a receivership proceeding. From the judgment, petitioner appeals, and Richards brings cross-error.

*Reversed and remanded.*

Mr. EZRA KEELER, for appellant.

Mr. F. D. TAGGART, for appellee.

Mr. JUSTICE BAILEY delivered the opinion of the court:

Late in the afternoon of the 20th day of September, 1899, appellee, John H. Richards, demanded of The Revenue Mining, Milling and Tunnel Company a settlement on account of his claim for damages for personal injuries alleged to have been theretofore received by him. Upon the following day, one L. M. Kimball, a director of the corporation, filed in the district court of Arapahoe county his complaint, alleging that the corporation was indebted to him in the

sum of $12,000.00; that the corporation was insolvent, and praying the appointment of a receiver. In the filing of this complaint, E. W. Waybright acted as attorney for plaintiff. The corporation, by E. H. Wilson, its attorney, upon the same day confessed the truth of the complaint and the motion of Waybright, attorney for plaintiff, for the appointment of a receiver, and, upon the same day, the court appointed James L. Wilson, father of E. H. Wilson, as receiver. Subsequently, the claim of E. H. Wilson against the corporation was filed and allowed, for the sum of $5,300. E. H. Wilson was the attorney for the corporation, and, after the obtaining of the judgment, seems to have appeared as counsel for the plaintiff, Kimball, the corporation and the receiver, as well as B. R. Cowan, who was the president of the corporation and who filed a claim which was allowed, amounting to $13,280.28.

The property of the corporation, aside from certain mining machinery and appliances used in mining, consisted of unpatented mining claims. The receiver represented to the court that it was necessary to perform labor upon these claims to avoid their being relocated by some other parties. Permission was granted to perform the labor, and B. R. Cowan furnished the money for that purpose, amounting to $6,000. His claim against the estate for this amount was allowed as a preferred claim.

During the period when these matters were progressing, Richards instituted suit against the company, and obtained judgment against it on the 27th day of March, 1901, for $10,000. He caused execution to be issued, which was returned unsatisfied. He likewise caused a transcript of the judgment to be filed in the office of the clerk and recorder, for the purpose of making it a lien against the real estate of the corporation.

On the 4th of September, 1901, the receiver, Wilson, filed a petition to sell all of the property of the corporation for the purpose of paying the debts. On the 22nd of October, the court made its order authorizing the sale of the property. On the 2nd of November, 1901, Richards filed his amended petition. There is nothing in the several abstracts to show when the original petition was filed. In this amended petition, Richards alleges that, at the time he received his injuries, to wit, in June, 1898, the company was not indebted to any person; that at five o'clock on the 20th of September, 1899, petitioner demanded of defendant a settlement in full for his damages; that, within twenty-four hours thereafter, the plaintiff in the action to have a receiver appointed, and who was a resident of the city of Boston, prepared his complaint, and caused the same to be filed; that the corporation, Kimball and James L. Wilson, by their respective attorneys, conspired fraudulently to place the property of the corporation in the hands of a receiver with the purpose and intent of depriving petitioner of every remedy against defendant and its stockholders for the collection of his judgment. He further alleges that defendant was not insolvent at the time of the commencement of the receivership suit, but that the proceedings were instituted for the sole purpose of preventing Richards, when he obtained his judgment, from collecting the same; that the proceeding instituted by Kimball for the appointment of a receiver was made at the instigation of the corporation, acting through its stockholders and directors; that the claims of Kimball, Cowan and Wilson against the corporation were for money paid by them upon stock subscriptions or for assessments voluntarily paid by them and other stockholders for the prosecution of the work of defendant; and praying

that his judgment be allowed as a claim against the estate.

The receiver objected to the allowance of the claim of Richards, and the court made an order that all of the claimants appear on the 23d day of December, and show cause, if any, why the claim of Richards should not be allowed, and allowed as a preferred claim.   J. L. Wilson, receiver, B. R. Cowan, E. H. Wilson and L. M. Kimball filed answers to the petition of Richards.   In none of these answers are the allegations made by Richards concerning the conspiracy and fraudulent conduct of the parties denied. They allege, however, that Richards's claim is unjust and his judgment was unjustly obtained through fraud, and that E. H. Wilson was defendant's attorney and had sole charge of defendant's interest.

After the filing of this amended petition, the property of the corporation was sold to B. R. Cowan for the sum of $39,000, $3,000 of which was paid in cash, and $36,000 withheld until the sale should be approved.   Cowan procured assignments of all of the claims against the estate except the Richards judgment, and these claims appear to have been presented by and allowed in favor of members of the board of directors of the corporation and their attorney, E. H. Wilson.   Upon the filing of the several answers to Richards's petition, the court heard the matter and allowed the claim.   Cowan then refused to make his bid for the property good, for the reason that, at the time he made the bid, the Richards claim was not allowed, and that all of the claims and expenses of administration which had then been allowed would not exceed $39,000, the amount of his bid; that the Richards claim, being allowed and being entitled to a *pro rata* share of the purchase money, would necessitate paying something like $8,000 in cash, which Cowan had not contemplated.

The property was then ordered resold, and, at the second sale, was purchased by J. J. Watrous, who was also a member of the board of directors. He bid the sum of $8,500, paid $100 in cash on the bid, and reserved $8,400 until approval of the sale, and had assigned to him the claim of Cowan.

Richards then filed a petition requesting that he be allowed to have an execution issued, and levied upon this property, and the same sold to satisfy his judgment. His petition was disallowed, and Richards saved an exception. He subsequently filed a petition in which he again alleges a conspiracy existing between the directors of the company; that the receiver was appointed by the connivance of the corporation and of these creditors, who were directors, and asked that his claim be made superior to the claims of Kimball, the two Wilsons and Cowan. The court ruled that the claim of Cowan should not be paid until after the claims of Richards, Kimball and E. H. Wilson were satisfied. Cowan saved an exception. Watrous then filed his petition, in which he alleged that the claim of Cowan had been assigned to him, and that, inasmuch as $6,000 of the claim was for the purpose of defraying the expense of administration and for the development of the property, and that $3,000 was the cash which had been paid by Cowan at the time of the abortive sale, that these should be preferred claims, and be allowed before Richards should receive anything. At this time there was no money in the hands of the receiver or the court belonging to the estate. All that had been paid in had become exhausted by the receiver, in paying himself and in other administration expenses.

At the hearing upon Watrous's petition, it was shown that, at the time of the sale to Cowan, Wilson came upon the court-house steps and inquired of Mr. Keeler, the attorney, as to the amount of the claims.

Keeler said that, as near as he could figure it, they would amount to $39,000. Wilson then stated that they would bid the $39,000. Keeler replied that he thought they were making a mistake in bidding so much for the property. To this Wilson replied: ''I have just seen them all, I have just come from them, and we have fully concluded to bid it in for the full amount of all the claims, and take our chances on the allowance of the claim of Richards against the estate, and fight him to a finish.''

The petition of Watrous was denied, and it was ordered that he pay into court the balance of the purchase money for the property sold to him by the receiver, amounting to $8,400, to be distributed in accordance with the previous order. Watrous took exceptions, and brought the case here upon appeal, making Richards, Kimball and E. H. Wilson appellees.

Richards filed cross-errors, alleging that the court erred, first, in refusing to grant him an execution against the property, and, second, in refusing to make his claim superior to those of Kimball and E. H. Wilson.

The foregoing are the material facts in this case as we are able to gather them from the abstracts. On account of the unsatisfactory manner in which the abstracts have been prepared, it is possible that some facts which might appear to be material have been omitted from the above statement. We have before us an abstract of the record, a supplemental abstract of the record, and an abstract of the supplemental record. Neither of these abstracts have been prepared with any regard either to the chronological history or the logical arrangement of the case, and counsel preparing them, evidently believing that ''brevity is the soul of wit,'' so condensed much of the matter as to leave it well-nigh unintelligible.

Cowan, by his bid at the receiver's sale, made a contract to purchase the property for $39,000. In refusing to make his bid good, he violated the terms of this contract, and became liable to the estate. His excuse that, at the time of the sale, the Richards claim had not been allowed, is paltry. He, as president of the corporation, knew that the judgment had been rendered against the company for $10,000. He knew that the petition had been filed asking for its allowance against the estate, and that he, with other creditors, was ruled to answer that petition and show cause why it should not be allowed as a preferred claim. In making his bid, he had no right to believe that this claim would be disallowed. The allegation of his answer, that the judgment was procured by fraud, is meaningless, because he fails and neglects to state wherein the fraud consists. Courts will not take a mere allegation of fraud as proof of its existence. Wilson, the attorney for Cowan, was the attorney for the corporation in the action wherein Richards obtained his judgment. If fraud existed, the company, Cowan and the other directors had their remedy in a direct proceeding, and were not driven to a collateral attack upon the judgment.

Where one makes a contract to purchase property at an agreed price and fails to comply with his contract, the measure of damages for the breach is the difference between the contract price and that for which the property may be sold in the open market.—*Colo. Springs Live Stock Co. v. Godding,* 2 Colo. App. 1; *Kincaid v. Price,* 18 Colo. App. 73.

By the purchase at a judicial sale, the purchaser becomes a party to the proceedings in which the sale is made. Now, whoever makes himself a party to the proceedings of a court of general equity jurisdiction, and undertakes to do a particular thing under its decretal orders, may be compelled to perform what

he has undertaken. The proper tribunal to compel it is the same court, and, by a motion in the same cause, in which the undertaking occurred.—Rorer on Judicial Sales, § 148.

The same author says that, if the buyer fails to pay, the commissioner selling may petition the court in the original cause, if a court of general powers, even without notice to the buyer; because, by the purchase, he is a party, and is in the court, and an order of re-sale may be made. If, at the re-sale, there is a deficiency, the former purchaser is held liable for the difference between his bid and the amount for which the property is sold.—Rorer on Judicial Sales, § 157.

To the same effect is the doctrine laid down in *Adams v. McMillan*, 7 Port. 88; *Girard v. Taggart*, 5 Serg. & Rawles Rep. 19.

Appellant contends that the proceedings in the district court were all wrong, because he has not had his day. Of course appellant stands in the shoes of his assignor, Cowan, and has no greater nor less rights than Cowan would have had if he had filed the petition himself. By his petition, Watrous did, or could have, if he did not, set up fully all matters which might have been offered as a defense by Cowan to the petition filed by Richards to have his claim declared superior to that of Cowan. It is evident that Cowan, either in person or by counsel, was present in court at the time the order was made, because he excepted to it, and took time to prepare a bill of exceptions. This purpose he evidently abandoned, and transferred his claim to Watrous, who appears to have elected to try the matter upon his petition rather than upon the bill of exceptions. We are unable to see how his rights have been prejudiced by following the remedy which he selected. There ap-

pears to have been a complete hearing, and the matter disposed of.

As was said in a similar case, that of *Clarkson v. Read*, 15 Gratt. 298:

"In the case before us, the purchaser appeared to the rule, filed his answer, and went into the examination of witnesses for the purpose of proving the justice of the causes which he assigned why he should not be subject to the order and decree asked against him. There is nothing to show, and, indeed, it is not suggested, that he has, by the summary character of the proceeding, been precluded from making any resistance or defense to the decree rendered, which he would or might have made in the course of a formal suit."

In the case of *Casamajor v. Strode*, 1 Cond. Eng. Ch. Rep. 195, it is said:

"A purchaser under a decree for the sale of lands, though not a party to the cause, does, by the act of purchase, submit himself to the jurisdiction of the court as to all matters connected with that character."

See, also: *Wood v. Mann*, 3 Sumner 318, and *Requa v. Rea*, 2 Paige 341.

The district court, in ordering the re-sale of the property, and in holding the original purchaser for the difference between the amount of his bid and the amount for which the property was sold at the second sale, has followed the precedents established by the authorities.

In Daniel's Chancery Practice, it is said:

"After the report of a sale by a master is confirmed, there are three modes of remedying the failure of the purchaser to comply with its terms, one of which is that an order may be made for the estate to be resold and for the purchaser to pay the expense arising from the non-completion of the purchase and

the re-sale, and any deficiency in the price arising upon the second sale.''

This is the rule as announced by Pomeroy in Note 2, after *Mount v. Brown*, 69 Am. Dec. 368, wherein it is also stated:

''Where a person becomes a purchaser under a decree in equity, he submits himself to the jurisdiction of the court in that suit, as to all matters connected with the sale or relating to him in the character of purchaser.''

Such an order was made by Lord Cottingham in *Harding v. Harding*, 18 Eng. Ch. 514. The purchaser of property sold under a decree of a chancery court becomes a quasi party to the cause so far as relates to the rights and duties that properly pertain to his purchase under the decree, and hence, if he fails to pay the purchase money or any part thereof at the time it becomes due, the court may, without notice, take the proper steps, either by execution or otherwise, to see that the matter is paid.—*Blackmore v. Barker*, 2 Swan 340; *Ogilvie v. Richardson*, 14 Wis. 157; *Ogilvie v. Richardson*, 18 Wis. 157; *Stimson v. Mead*, 2 R. I. 541; *Still v. Boon*, 37 Tenn. 194.

In *Townshend v. Simon*, 38 N. J. L. 240, it is said:

''It may be assumed, as an established doctrine of the Court of Chancery, that a purchaser under a decree by the act of purchase submits himself to the jurisdiction of the court as to all matters connected with the sale which relate to him in the character of a purchaser.''—*Casamajor v. Strode*, 1 Sim. & Stu. 381; *Requa v. Rea*, 2 Paige 339; *Shann v. Jones*, 4 C. E. Green 251.

The sale may be set aside by an order in the original cause without a bill being filed.—*Brown v. Frost*, 10 Paige 243; *Wetzler v. Schaumann*, 9 C. E. Green 60.

It has also been held that the purchaser may be compelled to complete the purchase by a summary order in the original cause.—*Landsdown v. Elderton,* 14 Ves. 512; *Wood v. Mason,* 3 Sumner 318; *Cazet v. Hubbell,* 36 N. Y. 677; *Silver v. Campbell,* 10 C. E. Green 465.

The modern practice of the English courts is by an order to direct the premises to be resold, and the purchaser to pay the costs and expense of the sale and also the deficiency, if any, in the price of the second sale. Appellant Watrous has nothing to complain of in the action of the court, and his plea is without merit.

If the petition of Richards to set aside the order appointing a receiver and awarding him an execution against the property had been made in apt time, it would probably have been granted, because the allegations of the petition and the affidavits in support of the petition, which were not denied, show that the court below was imposed upon; that the receiver was appointed, not for the purpose of protecting the creditors of the corporation, but for the purpose of protecting the corporation against its creditors, and this ought not to be tolerated.—*Jones v. Bank of Leadville,* 10 Colo. 464; *Sage v. Memphis R. R. Co.,* 5 McCrary 643.

But, at first, Richards apparently was satisfied to let the appointment of a receiver stand, and content himself with having his claim allowed against the estate, and, if possible, to secure its preference. It was not until the conspiracy and fraudulent conduct of Cowan and his associates became so glaring that it became apparent that he would be unable to recover upon his judgment that Richards sought to have the order appointing the receiver set aside and his execution allowed. Having once elected which

remedy he would pursue, he could not afterwards abandon it and revert to the other.

While the court was correct in refusing to discharge the receiver and allow execution against the property, it should, nevertheless, have made the claim of Richards superior to the claims of Kimball and E. H. Wilson. These parties, being directors and managers of the corporation, it was their duty as such to see that the creditors of the company were protected. Instead of doing this, they evidently conspired together to defraud Richards of the amount of money which the court had determined was his due because of the personal injuries theretofore sustained on account of the negligence of the corporation. It was alleged by affidavit and petition, and was not denied, that the claims of these parties, instead of being *bona fide*, were for money which they had paid to the corporation for their capital stock. It is averred by petition and affidavit, and not denied, that the appointment of the receiver and all of the receivership proceedings, were had for the sole purpose of defeating this claim. It was shown by the proof that Wilson, after having conferred with his associates, said that they had concluded to bid in this property for $39,000, and take chances on Richards's claim being allowed; that they would fight him to a finish. Now this was all wrong, and the court should not have permitted either Wilson or Kimball to harvest the fruits of their dishonor.

In cases of this character, where the receiver of a corporation was appointed at the instance of a member of the board of directors, the corporation consenting thereto and confessing judgment for the amount of the claim of such director, and where, during the entire proceedings, it is apparent that the attorney and members of the corporation's directorate are conniving to defeat the collection of a judgment against

the corporation, and where it appears that the directors of a company who are creditors were endeavoring to so manipulate the estate in the hands of a receiver as to deprive the creditor who is not a director of his just share of the trust estate, the ends of justice demand that a payment of the claims of such directors and corporation managers shall be postponed until after the payment of the claim of him whom it was sought to defraud.

The judgment of the lower court will be reversed, and the cause remanded, with instructions to enter a decree making the claim of appellee Richards a preferred claim as against the claims of L. M. Kimball and E. H. Wilson, as well as the claim of B. R. Cowan.

*Reversed and remanded.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE GODDARD concur.