### DUNSCOMB and others *v.* HOLST and others.

*(Circuit Court, W. D. Tennessee.   June 21, 1882.)*

1. JUDICIAL SALE—RIGHT OF PURCHASER TO DEMAND GOOD TITLE—WILL.

At a sale of land at public auction by an officer of the court, where the title to the land was acquired by the defendant under the following devise in a will: "I bequeath to my daughter [the land in question] for her and her children's sole and separate use, free from any claim or control of her husband,"—and the purchaser at the sale declined to comply with the terms of his purchase, alleging a defect of title, *held,* that a title acquired by such a devisee is not of such clear and indisputable character as the purchaser has a right to demand, and that a court of equity will relieve the purchaser from complying with his bid made at the sale.

2. SAME—SAME—PRACTICE—RESALE.

That under such circumstances, and after an investigation of the title by the master, the court will order a resale of such interest in the land as the defendants to the suit may have.

In Equity.

Under a decree of sale in this cause the marshal·was ordered to sell at public auction the interest of the bankrupts in certain real estate and leasehold property in Memphis, the terms of sale being one-third cash, the balance in equal payments, on a credit of six and twelve months. Among other property was a tract known as the east 100 feet of lot 4, in block 50, South Memphis, 75 feet deep. At the marshal's sale Robert R. Church became the purchaser of this land at a bid of $260, but under the advice of counsel, who examined the title to this land for him, Church declined to comply with the terms of his purchase for an alleged defect in the chain of title, and his action was reported to the court.

On April 10, 1882, an order of reference was made to the master in chancery of this court to investigate this title, and make report whether said purchaser ought to comply with his bid.

On May 26th John B. Clough, Esq., the master, filed his report in the case, the material portion of which is as follows:

"I find and report that the ·said purchaser declines to comply with the terms of his purchase for an alleged defect of Mrs. Margaret Holst's title to the said land. This defect, as claimed before me, arises under the will of Narcissa Brooks, under which Mrs. Holst's immediate grantor, Mrs. Amelia E. Rogers, derived title; and it is admitted that if, under the said will, Mrs. Rogers took a fee-simple title, Mrs. Holst took the same under her deed from Mrs. Rogers, dated September 23, 1868. * * · * It is further admitted on this reference that the said purchaser, Robert R. Church, is desirous to comply with his bid made for this land at the marshal's sale herein, provided he obtains a good title in fee-simple to the same, and that his refusal to comply therewith is made solely on account of the supposed defect of title.

"The devise to the said Amelia Rogers in the said will is in these words: 'I bequeath to my daughter, Amelia, [the said land,] for her and her children's sole and separate use, free from any claim or control of her husband.' By another and the following clause of said will the testatrix devises other and adjoining land to the above devisee and another daughter by this. language: 'I also bequeath the residue of my lot * * * to my two daughters, Amelia Rogers and Ellen Holst, and their children, forever, for their sole and separate use, free from any control of their husbands; and in case of the demise of one or either of my daughters without children, then the portion inherited by her is to revert to the other and her children, retaining all the original conditions.' These are the only bequests made by the will, and William Rogers, the husband of Amelia, was named executor. The will was made and executed May 3, 1866, and was filed in the probate court May 5, 1868, the testatrix having died in the preceding April.

"At the date of Mrs. Brooks' death, Amelia E. Rogers and her husband, William, were both living, and had at that time six daughters living, all minors, the eldest being some sixteen years of age and the youngest only one or two years old. Subsequently a son was born, who died in infancy. The

mother, Amelia E. Rogers, is now living, together with her six daughters, three of whom are married and three unmarried, their ages being now respectively about 14, 15, 21, 23, 26, and 30 years. I assume, and it has not been controverted, that since the date of her deed, September 23, 1868, Mrs. Margaret Holst has been in actual, continued, and uninterrupted possession of this property.

"The case of *Beecher* v. *Hicks*, 7 Lea, 207, was the construction of a deed to 'Sarah——, the wife of James——, for her sole and separate use and benefit, and free from all the debts, liabilities, and contracts of her said husband, and to the children of the said Sarah upon her body begotten by her said husband;' and it was held by the supreme court of this state that 'the mother did not take a fee in the land, but only a separate life estate,' and that on her death the entire estate passed to her children by the terms of the deed.

"The will construed by the same court in *Bowers* v. *Bowers*, 4 Heisk. 293, was in these words: 'I bequeath to my daughter Caroline' (wife of Bowers) certain land described in the will, 'to have and to hold the same to her and her children, to their special use and benefit, forever;' and the court held that 'the legal title was vested in the daughter, but she was to hold it as trustee for the joint use and benefit of herself and her children. The daughter, therefore, had the legal title to the whole property, and an equal equitable interest therein with each of her children. * * * The testator intended that his daughter and all of her children should enjoy the use and benefit of the property until the legal and equitable title should be vested in the children when his daughter should die. It was further the intention of the testator to give to his daughter the sole and separate use of the property for herself and children, excluding the right of the husband. * * * It is well settled that the term 'children,' as well as all other similar terms descriptive of classes or relations, must always be understood in wills in its primary and simple signification when it can be done; in short, where there are any persons in existence at the time of the will, or before the time of the devise or legacy takes effect, answering the meaning of the terms, such persons will be intended to be designated.' See, also, *Stubbs* v. *Stubbs*, 11 Humph. 43; *Williams* v. *Sneed*, 3 Cold. 538; *Booker* v. *Booker*, 5 Humph. 505.

"In *Turner* v. *Ivie*, 5 Heisk. 222, the devise in the will was as follows: 'I give to my son John, in trust, for the sole use and benefit of my daughter Sarah and to her children, if she should have any, a tract of land; * * * and should my daughter, the said Sarah, die without any child or children, the property to return to my children.' At the death of the testator Sarah was but 11 years old. She afterwards married and had children, and she and her husband conveyed the land to the defendants. After her death the children brought suit, and, in deciding in their favor, the court says: 'There can be no doubt that the intention of the testator was to give to his daughter the equitable title to the land during her life, and at her death to give the legal title to any child or children she might then have.'

"*Pierce* v. *Ridley*, 1 Bax. 145, involved a construction of the following final clause of a will: 'The balance of my estate to be equally divided among the heirs of my body. The portion that goes to my sons I give to the heirs of their bodies, and hereby appoint each of my sons trustees, without bond, of

his respective portion;' and it was held that the legal title was vested in the sons respectively as trustees of their children, who took the beneficial interests.

"In the case of *Belote* v. *White*, 2 Head, 703, the will gave real and personal property to three trustees 'for the use and annual support of my daughter Elizabeth and her children;' the concluding clause providing that the trustees were to hold the same 'in trust for the use and benefit of my daughter Elizabeth and her children, present and future, * * * and after her death the whole to be equally divided between all her living children and the heirs of those who may be dead;' and the court, in construing the rights of the parties under that will, held that 'the trustees took the legal title of the whole property during the life of Elizabeth, and at her death the entire estate became invested in her children; that at the testator's death Elizabeth and her children took an equitable estate as tenants in common in equal shares, her interest being for life only, with remainder as to that interest to them and their interests in fee.'

"In *Ellis* v. *Fisher*, 3 Sneed, 230, the testator made a devise in these words: 'I give to my sons, W. and J., as trustees, in trust for the use and benefit of my daughter Nancy, a tract of land,' with $1,000 in money, the interest on which was to be 'for her separate use and benefit during her natural life. * * * The land is to vest in my said sons * * * in trust for the use and benefit of my said daughter during her natural life, and at her death to the use of the heirs of her body, if she have any, and in default of the heirs of her body, then to my own right heirs.' Nancy died in 1850, leaving a husband and three minor children surviving her. *Held*, 'that the trustees took the legal estate only for the life of Nancy, the trust being merely to protect the property against the marital rights of her husband. Upon the death of Nancy the absolute title vested in the heirs of her body. * * * On Nancy's death the limitation to the heirs of her body was instantly executed in them, consequently they became vested with the legal estate, not as heirs, but as purchasers.'

"But in *Middleton* v. *Smith*, 1 Cold. 144, the devise was to Jane, 'for the benefit of my daughter Jane and her bodily heirs;' and the court held she took an estate tail, or conditional fee at common law, which under our statutes became an estate in fee-simple in Tennessee.

"The deed construed in *Kirk* v. *Furgerson*, 6 Cold. 479, was as follows: 'Which said lot I give, grant, and convey to the said Rachel, and to her heirs, —the natural issue of her body,—forever; if there should be no issue, then the said lot to descend to my grandchildren;' and the court decided that the limitation to the grandchildren was void, and that the grantee took an absolute title, subject to her husband's life estate.

"*Skillin* v. *Loyd*, 6 Cold. 563, involved the construction of a will in the following language: 'I give and bequeath to Julia (wife of S.) and the heirs of her body, for her sole and separate use during her natural life,' certain real and personal property therein described; and the decision followed that of the preceding case of *Kirk* v. *Ferguson*, the court holding that Julia took an estate in fee-simple, in which the marital rights of her husband were excluded. See Tennessee Code, §§ 2006, 2008.

"The following cases are cited for the convenience of the court and counsel, as bearing upon the construction of the will in question here: *Moyston* v. *Bacon*, 7 Lea, 236; *Ragsdale* v. *Mabry*, 8 Bax. 300; *Wynne* v. *Wynne*, 9 Heisk. 308; *Alexander* v. *Miller*, 7 Heisk. 81; *Owen* v. *Hancock*, 1 Head, 563; *Smith* v. *Metcalf*, Id. 64; *Woodrum* v. *Kirkpatrick*, 2 Swan. 224; *Petty* v. *Moore*, 5 Sneed, 127; and *Hamilton* v. *Bishop*, 8 Yerg. 41. I have not consulted authorities outside the decisions of our own state supreme court, as the Tennessee adjudications, it seems to me, must control the question made here.

"As a result of the foregoing cases, and my investigation, I report that Mrs. Amelia E. Rogers did not take a fee-simple title under the will of her mother; that she could not, therefore, and did not, convey such a title to Mrs. Margaret Holst by the deed of September 23, 1868, and that, consequently, at the marshal's sale the purchaser, Mr. Church, by complying with his bid, could not obtain a good title in fee to the said land, and should not be compelled to pay the amount of his bid.

"Yet the decree of sale made in the cause contemplates the disposal of all Mrs. Margaret Holst's interest in this land, and whatever interest she has, if of any value, may yet be sold, and such I assume was the intention of the court on the decree ordering this reference, should it be finally determined that said Mrs. Holst has any interest therein less than the fee.

"Whatever interest or title Mrs. Amelia Rogers took under her mother's will, it is conceded, passed to Margaret Holst by the last-mentioned deed of this lot, and the case of *Bowers* v. *Bowers, supra*, in my opinion, is entirely conclusive of what that interest is. I can see little, if any, difference between the will in that case and this one, the language being almost identically the same in both, and I think of the same legal effect; and I therefore report that under her mother's will Amelia E. Rogers took the legal title for the joint use and benefit, in common, of herself and her six daughters; and that upon her death, her interest being for life only, the entire estate will pass to her said daughters. The interest in this land which passed to Margaret Holst was therefore only the life interest of Mrs. Rogers, as above stated, and I so report."

*Gantt & Patterson*, for R. R. Church.

*Calvin F. Vance*, for plaintiffs.

HAMMOND, D. J. This cause comes again before me on the report of the master as to the title of the land purchased and bid in by R. R. Church at a public sale by the marshal under a previous decree. No formal exceptions have been filed to this report; and while I have not critically examined the question of the alleged defects in Mrs. Margaret Holst's title to this land, I am satisfied from the master's report that she did not take such a title as the purchaser is bound to accept, and that neither a deed from the marshal nor one from Margaret Holst would convey to this purchaser the clear and undoubted character of title he has a right to demand. It is, perhaps,

not necessary to now determine just what interest she has in the property, it sufficiently appearing that she has some interest.

From the statements of counsel at the bar, and, indeed, from the report itself, it appears that the purchaser is desirous of complying with his bid, and is perfectly responsible for the amount, if he can thereby acquire a good and indefeasible title to this land, and that his bid was made in good faith. Under such circumstances a purchaser has a right to require a good title, and will not be compelled to complete his purchase if such title cannot be given. The usual course in such cases is to direct a reference, as has been done here, and if it appears that the title is not good, and cannot be made perfect by deeds from the parties in the suit before the court, to relieve the purchaser from his bid and order a resale of the property. 2 Daniell, Ch. Pl. & Pr. 1276–1285, and cases cited in notes.

Let a decree be entered relieving the purchaser from complying with his bid, and ordering a resale of such interest as the defendants have in the property.