[No. 3351.]

## MULLEN V. BROMLEY, Receiver.

1. UNION PACIFIC RAILWAY GRANT—*Title.* It seems that the title acquired by the Union Pacific Railway Company to its right of way, under the Acts of Congress (12 Stat., c. 120; 13 Stat., c. ccxvi; 15 Stat., c. xxvii, p. 324) is inalienable, and not subject to be divested by an adverse possession.

2. VENDOR AND PURCHASER—*Judicial Sale—Title.* Where a court, through its receiver or other administrative officer, assumes to sell real property, under circumstances implying the right of the purchaser to demand a good title, the purchaser will not be required to accept a title which is clearly defective or unmarketable.

3. —— *Contract Construed.* A letter proposing to purchase certain real property, from a receiver, enclosed a deposit, and stated that the residue would be paid "as soon as the title is made satis-

factory to our attorney." Held to import as a condition prece-
dent that a satisfactory title must be furnished.

And though the purchaser, with the consent of the receiver,
assumed possession of the property, and made extensive improve-
ments, and a deed, never accepted, was tendered, no contract was
consummated, and the court was without power to require the
purchaser to pay the residue of the price offiered, accepting a
mere paper title, in direct opposition to the expressed conditions
of his offer.

4. COURTS—*Authority.* A court has no power to compel one
dealing with its receiver to purchase property on conditions dif-
fering from those prescribed by the purchaser in his offer of
purchase. Such an order made without notice to the purchaser
is without effect.

5. ORDER OF COURT—*Construed.* An order of court authorizing its
receiver to sell and convey certain real property described therein,
at private sale, for "not less" than a sum named, "and for as
much higher price as is possible to procure therefor," and to
execute a proper deed of conveyance "to be approved by the court
before delivery" is not a confirmation of a previous sale alleged
to have been made by the receiver, but which in fact consisted of
an offer for a satisfactory title, which the receiver was unable
to furnish.

*Appeal from the Adams District Court.* Hon.
HARRY P. GAMBLE, Judge.

Mr. CHARLES W. WATERMAN, Mr. JAMES E.
O'CONNOR, Mr. CALDWELL MARTIN, for appellant.

Mr. C. H. PIERCE, Mr. G. A. GARARD, for appel-
lee.

WALLING, Judge.

In a suit pending in the district court of Adams
County, appellee was appointed receiver of the prop-
erty of The Brighton Milling and Elevator Company
(hereinafter called the Brighton company), with
power to sell all real estate and other property owned
by the company, under the direction and orders of

the court. Subsequently the following letter was written by appellant to appellee, and received by the latter:

"Denver, Colorado, May 29, 1906.

E. A. Bromley, Receiver,
    Brighton, Colo.

Dear Sir:—

Mr. Herman Rueter was here last week and I had a talk with him in regard to the purchase of the Brighton elevator, together with the four lots that go with the property. Myself and our superintendent went down and looked it over and I offered two thousand five hundred cash. I am this day in receipt of a letter from Mr. Rueter accepting my offer. He says he gave the letter to you and that you informed him you would accept the offer but that you had to go away for three or four days and that as soon as you returned you would get the title and abstract and turn the property over to me.

In accordance with this letter I will understand that the property is sold by you and purchased by me on above terms and to show good faith, enclosed find my check for $100 to apply on the payment. The other $2,400 to be paid as soon as title is made satisfactory to our attorney, you to furnish abstract as soon as you possibly can.

Please acknowledge receipt of this check and state definitely how soon you can give possession. I don't think we ought to pay the entire taxes for the year 1906 as the year is now half past and it would be fair to deduct the proportionate amount of taxes; that is to say, whatever the taxes were last year, I think that 5-12ths of that amount covering the five

months of this year that you have been in possession should be deducted from the purchase price.

We should like to send some one down at once to begin work remodeling the place. Kindly advise us whether or not we may do so, obliging. Will have two men go to work there in the morning.

Yours very truly,

(Signed)     J. K. Mullen."

The Mr. Rueter mentioned in the letter was an officer and a large stockholder and creditor of the Brighton company, and in order to accomplish the winding up of its affairs and sale of its assets, he had induced appellant to make an examination of the mill and elevator property, which was followed by the proposal for its purchase, indicated in the letter to the receiver. It does not appear that appellee made any direct reply to appellant's letter, but he retained and collected the check for one hundred dollars sent by the appellant; and the latter took possession of the property within a few days after the date of his letter, and proceeded to make some extensive repairs and alterations, as hereafter stated. On the twenty-sixth day of June, following the receipt of appellant's letter, appellee obtained an order from the judge of the district court authorizing him to sell and convey lots forty-six and forty-seven, and fractional lots forty-eight and forty-nine, in block three, Brighton Park, Adams County, "at private sale for not less than twenty-five hundred dollars ($2,500), and for as much higher price as is possible to procure therefor," and, when sold, "to execute a proper deed of conveyance therefor to the purchaser, the same to be first approved by the court before delivery." That order was made upon the

petition of the receiver for permission to sell at private sale the property described, stating that he "has an offer therefor from one J. K. Mullen of twenty-five hundred dollars ($2,500.00); that this is the best offer that he has been able to get, and that he believes the same to be as much as the property is worth and the most that can be obtained for it;" and asking the court's order to "sell said property to said J. K. Mullen and to make a deed in accordance with said order." Sometime after August eighth following, appellee transmitted to appellant, or his attorney, a receiver's deed, bearing date August 8th, 1906, purporting to convey to the appellant lots forty-six, forty-seven, forty-eight and forty-nine, block three, Brighton Park, the granting clause containing the recital that "the intention of this deed is to convey all of the right, title and interest of said milling company in and to said property to grantee herein, and also to convey to grantee herein all of the right, title and interest of said company in and to the mill and machinery and other property appurtenant to said milling and elevator business." An abstract of the title of the lots was sent with the deed. The deed was returned to appellee by appellant's attorney, on August 22nd, 1906, with a letter from the attorney, in which he stated: "We have held the deed up to hear from you or Mr. Garard in regard to the claim of the Union Pacific Railway Company as to its ownership of a portion of the property, and that we might take the matter up with you and see if you could make Mr. Mullen any title to the property. A recent letter from Mr. Garard shows us that he is not inclined to do anything in the matter, and I will write him on that

point, but anyway, we are of the opinion that you could not give us any title as receiver; and further this deed is not in such form that we could approve it even if you could give such title,'' etc. Mr. Garard was the attorney for the receiver. It appears that the deed so returned thereafter remained in the hands of the appellee. There appears to have been some further communications between appellant and appellee, or their attorneys, the exact nature whereof is not shown by the record, until about March 19th, 1907, on which date the receiver procured from the judge of the court an order to the effect that appellant ''accept the deed heretofore tendered him by the receiver and pay the amount due on the agreed purchase price of said property, or show cause to said court why the same should not be done.''

In response to this order to show cause, appellant filed an answer, setting up his letter to appellee of May twenty-ninth, the payment of the one hundred dollars, and the delivery of the abstract of title of the lots to appellant for examination. He further averred that he caused examination to be made of the title to the premises, which showed that the title to the greater part of the lots was vested in The Union Pacific Railroad Company, and not in the Brighton company, or its receiver, and that the receiver, at the time of receiving the offer to purchase, knew the title was in that condition; that the respondent (appellant) had at all times since the date of his offer been ready, able and willing to comply with the same, but that the receiver had failed and refused to convey a good and sufficient title to the lots, or to refund the one hundred dollars paid. This pleading contained a prayer that the receiver be or-

dered to refund the one hundred dollars, and that the order of June twenty-sixth be rescinded and held for naught. Subsequently appellee filed what was styled an answer to the above mentioned pleading of appellant, in which he denied its statements with reference to the title, and affirmatively averred that the title of the Brighton company, as tendered by the receiver, was good and sufficient, and that the claim of the railroad company was without merit. This answer of the appellee also alleged, among other things, that appellant took possession of the property, with the building situated thereon and the machinery and appliances therein contained, and remodeled and enlarged the old building, making it an integral part of a new building erected upon the same ground, and thereafter occupied and used the premises for the purposes of a mill and elevator; and that appellant "has retained and now has full, complete and undisturbed possession thereof." In one or more of the so-called separate defenses of the receiver's answer, there were statements to the effect that appellant purchased the property at a judicial sale, with notice of the alleged defect in the title. In one of those defenses it was averred that "the buildings and property of the Brighton company were placed upon said property by and with the consent of the Union Pacific Railway Company," with full knowledge of the purposes for which the same were to be used; and that the railroad company had permitted appellant to occupy and use the same. There were further allegations to the effect that appellant, by retaining the possession of the premises, had estopped himself from refusing to complete the purchase. Other allegations of the answer need not

be stated. A motion interposed by appellant to strike out most of the affirmative allegations in the receiver's answer, and his demurrer to the alleged affirmative defenses therein, were overruled. Thereupon replication was filed wherein the appellee admitted his possession of the property, and that his occupancy was with the permission of the Union Pacific Railroad Company, and denied practically all other allegations of the receiver's answer. The answer of the receiver prayed that the court order appellant to pay to the receiver the sum of two thousand, four hundred dollars, with interest, etc.

Upon issues thus framed the matter was tried before the court, with the result that judgment was rendered ordering appellant to pay appellee, as receiver, two thousand, four hundred dollars, for the use of the Brighton company, and that appellant pay the costs of the proceeding against him, taxed in the sum of two hundred and sixty-five dollars and seventy-seven cents; from which judgment this appeal was prosecuted.

It appeared from the evidence that on September 28th, 1869, a receiver's receipt was issued by the receiver of the United States land office at Denver to David H. Moffat, Jr., which was followed by a patent to Moffat from the United States, of date May 10th, 1870, for a part of section six, township one south, range sixty-six west, which included the four lots, upon which was situated the mill and elevator building of the Brighton company, and to which that company claimed title through a chain of mesne conveyances from said original patentee, Moffat. The Brighton company, then, was in possession of the premises, and all thereof, so far as this record

shows, by its receiver, with apparent title of record from the government of the United States based upon the receiver's receipt and patent above mentioned, when appellant took possession of the property. The objection to the title thus tendered by the receiver was grounded in the conceded fact that the greater part of the four lots, including the part upon which the buildings were constructed, is within the strip, two hundred feet in width, measured from the center line of the main track of the Union Pacific Railroad Company; and therefore it is contended that the portion of the lots containing the buildings is a part of the right of way acquired by the railroad company's predecessor in title, The Denver Pacific Railway and Telegraph Company, under certain acts of Congress, to-wit, the act of July 1st, 1862 (chap. 120, 12 U. S. Stats.), providing for the incorporation of The Union Pacific Railroad Company and the construction of its railroad, etc., and amendatory and supplemental acts, it being shown that the main line of the railroad of the Union Pacific Company in that locality is the same, as to location, as the road originally graded and constructed by The Denver Pacific Railway and Telegraph Company. The history of these "Pacific Railroad acts," so far as they affect this controversy, and the construction given them by the courts of the United States, may be found in the opinion of the circuit court of appeals of this judicial circuit (the present Mr. Justice Van Devanter writing), in *Stuart v. Union Pacific R. R. Co.*, 178 Fed. 753, 103 C. C. A., 89, and in the several opinions of the judges of the same court in the recent case of *Union Pacific R. R. Co. v. City of Greeley*, 189 Fed. 1, and in decisions of the Supreme

Court of the United States referred to in those opinions.

The various acts of Congress mentioned were offered in evidence at the hearing in the district court, as well as a certain master's deed to the Union Pacific Railroad Company, whereby that company acquired title, through mortgage foreclosure, to all the railroad, right of way, lands, land grants, railroad property and franchises formerly owned by the Denver Pacific Railway and Telegraph Company— the company mentioned in the act of Congress of March 3rd, 1869 (15 U. S. Stats., page 324), which act is discussed in the opinions in *Union Pac. R. R. Co. v. City of Greeley, supra.* It was also in evidence that the roadway of the Union Pacific company is on the same location as the original line of the Denver Pacific Railway and Telegraph Company from Denver to Cheyenne. Without entering into any general discussion of the various opinions in the Greeley case, *supra,* it suffices to say that all of the judges were agreed that in virtue of the provisions of the act of March 3rd, 1869, in connection with the original Union Pacific act of July 1st, 1862, and the amendatory act of July 2nd, 1864 (chap. 216, 13 U. S. Stats.), the predecessors in title of the present Union Pacific Railroad Company acquired a right of way over the public lands of the United States extending two hundred feet in width on each side of the center line of the railroad of the Denver Pacific Railway and Telegraph Company from Denver to Cheyenne. As to the date when the grant of such right of way took effect, as against individuals claiming rights derived from the United States, by private purchase, or otherwise under the land laws

of the general government, there was a division of
opinion, two of the judges holding that the govern-
ment's power of disposition of lands within the lim-
its of the four-hundred-foot right of way terminated
with the passage of the amendatory act of July 2nd,
1864, while a third was of the opinion that the grant
of the right of way between Denver and Cheyenne
took effect absolutely, as of the date of the act of
March 3rd, 1869. The conclusion of the circuit court
of appeals as to the grant of the right of way over
the public lands to the extent of two hundred feet on
either side of the center line of the Denver Pacific
Railway and Telegraph Company, as originally
graded and constructed, is well supported by the lan-
guage of the act of March 3rd, 1869, as well as by the
decision of the supreme court of the United States
construing that act, in *U. S. v. U. P. Ry. Co.*, 148 U. S.
562. See also *Stuart v. U. P. R. R. Co., supra.* The
position assumed by Judge Reed in the Greeley case,
that the grant of the right of way became effective at
the date of the act of March 3rd, 1869, does not af-
fect the question presented in this case, since the
right of the railway company was certainly fixed
from that date; while the chain of title, under which
the Brighton company claimed, had its inception.
with the issuing of the receiver's receipt to David
H. Moffat, Jr., on the twenty-eighth day of Septem-
ber, 1869. So that, as the matter appears upon the
present record, the receiver's receipt and patent to
Moffat gave no title to any land within the limits
of the right of way, as definitely fixed by said act of
March 3rd, 1869.—*M. K. & T. Ry. Co. v. Kansas
Pac. Ry. Co.*, 97 U. S. 491; *R. R. Co. v. Baldwin,*
103 U. S. 426; *Bybee v. O. & C. R. R. Co.*, 139 U. S.

663; *Nor. Pac. Ry. Co. v. Hasse,* 197 U. S. 9; *Stuart v. U. P. R. R. Co., supra; U. P. R. R. Co. v. City of Greeley, supra.*

It is recognized by the two decisions last cited that the present Union Pacific company has succeeded to the rights of its various predecessors in title, including the Denver Pacific Railway and Telegraph Company, under the acts of Congress; and if that be true, it seems to follow that its title to the right of way in question is inalienable by private grant, without the consent of Congress, and not subject to be devested by adverse possession. *Nor. Pac. R. R. Co. v. Smith,* 171 U. S. 260; *Nor. Pac. Ry. Co. v. Ely,* 197 U. S. 1; *Kindred v. U. P. R. R. Co.,* 168 Fed. 648.

Of course, these matters are not for our decision upon this record, further than this,—that the preceding discussion proves that the title of the Brighton company to the portion of the lots included within the right of way of the railroad company is clearly defective, in a substantial sense, and that such defect is probably irremediable. As the part of the four lots, to which the Brighton company was without title, also contained the mill and elevator building, appellant's objection to the title tendered by the receiver was evidently weighty and important, and was not "without merit," or "a false and fraudulent pretext," as averred in the receiver's answer.

The doctrine of *caveat emptor* has no application to the conditions here presented. In the first place, it is the well-settled rule of courts of equity, that where the court, through its receiver or other administrative officer, undertakes to sell real property under the orders of the court, in circumstances

implying the right of the purchaser to demand and receive a sound title, and the purchaser, in good faith, objects to accepting the deed and paying the purchase price offered, on the ground that the court is unable to make him a good title, as bargained for, the purchaser will not be compelled to complete his purchase and accept a title which is bad or clearly unmarketable. Cases wherein the defects in the title have been remedied or compensation has been made to purchasers on equitable principles, are exceptional, and not within the present discussion. See Rorer on Judicial Sales (2nd ed.) section 150; *Morris v. Mowatt,* 2 Paige Chan., 586; *Graham v. Bleakie,* 2 Daly, 55; *Ormsby v. Terry,* 2 Bush. (Ky.) 553; *Shriver v. Shriver,* 86 N. Y. 575; *Fleming v. Burnham,* 100 N. Y. 1; *Heim v. Schwoerer,* 99 N. Y. Suppl. 553; *Speed v. Smith,* 4 Md. Chan. 299; *Hunting v. Walter,* 33 Md. 60; *Green v. Russell,* 103 Mich. 638; *Bolivar v. Zeigler,* 9 So. Car. 287; *Estate of Whiteman,* 13 Phila. Rep. 249; *Etter v. Scott,* 90 Va. 762; *Dunscomb v. Holst,* 13 Fed. 11; *Boorum v. Tucker,* 51 N. J. Eq. 135; *Roberts v. Bauer,* 35 La. Ann. 453.

*Watrous v. Hilliard,* 38 Colo. 255, prescribes no different rule. In that case, the excuse offered by the purchaser for not complying with his bid was denounced by the court as "paltry."

Furthermore, the evidence before us clearly shows that there was no completed sale as between the appellant and appellee. The former's proposition was in writing, and expressed in tolerably plain English an offer to purchase "the Brighton elevator, together with the four lots that go with the property," for two thousand, five hundred dollars cash, and it was stated: "In accordance with this letter

I will understand that the property is sold by you and purchased by me on above terms and to show good faith, enclosed find my check for $100 to apply on the payment, the other $2,400 to be paid as soon as title is made satisfactory to our attorney, you to furnish abstract as soon as you possibly can." Now, the appellee, by his own testimony, knew at that time that that part of the lots, upon which the elevator was situated, was within the two hundred feet claimed by the railroad company as its right of way. It was impossible, therefore, for him to comply with the terms of appellant's offer.

The order of June 26th, 1906, was not, in form or substance, the confirmation of a sale to appellant. It seems to have been obtained without notice, and upon its face merely authorized the receiver to sell the property for the price mentioned, or as much more as he might be able to get for it. In addition to this, the court had not the power to make a contract for appellant, without his consent, to purchase the property on any conditions other than those contained in his offer. There was no proof that he ever proposed or agreed to purchase or accept the title of the Brighton company, or made any offer except that contained in his letter of May twenty-ninth; but the evidence was conclusive to the contrary.

Within a few days after the date of his letter, appellant took possession of the elevator building and premises, and immediately proceeded to make extensive repairs and betterments in the old building. He remodeled it and installed therein new and improved mill machinery and equipment, and constructed a new elevator and warehouse adjoin-

ing, on the same premises. This work appears to have been done during the summer of 1906, at an expense to appellant of about five thousand dollars. All of this was with the approbation of the appellee, who stated that he was glad to have appellee take possession of the property, and he was evidently pleased to have it off his hands. It is true that appellee made no misrepresentation, or representation of any kind, to appellant, to induce him to take the property; neither did the former give the latter any information with respect to the title, further than to submit the deed and abstract for examination, some time in August, 1906. The contention, persistently advocated by appellee's counsel, that the Brighton company has complete title to all of the property described in the deed tendered to the appellant,—notwithstanding the undisputed fact that a large part of all the lots, including the improvements, and trackage facilities in connection therewith is located within two hundred feet of the center of the main track of the Union Pacific Railroad Company—cannot be upheld, as has been already shown. On the other hand, it is reasonably certain from the record that appellant took possession of the property, and made the expenditures and improvements thereon, in the expectation, induced principally by the statements of Mr. Rueter, that he would be able to purchase the entire property on the terms of the proposal made to the appellee. Appellant testified that when he sent the letter of May 29th, 1906, he had no information whatever that the entire lots upon which the mill building shown him by Mr. Rueter stood were not the property of the Brighton company, and that his offer was for the property as an

entirety, in consideration of its location as trackage property, with the sidetrack facilities already provided. His written proposal, however, was sufficiently definite and self-explanatory, and its purport was not, and could not have been, misunderstood.

It is further strenuously argued for appellee that appellant has waived any right to object that the Brighton company is without title to the portion of the lots mentioned, because he has not offered to restore the possession of the property to appellee; and a number of cases have been cited as bearing upon the conditions upon which equity will grant relief by way of the rescission or cancellation of a contract. It is not perceived that those cases have any application to the proceedings instituted by appellee on the basis of the order to show cause. Under the terms of that order, appellant's attitude would appear to have been rather analogous to that of a vendee, made defendant to a suit for purchase money by a vendor, who was unable to convey a satisfactory title, as agreed, assuming for the argument the existence of a contract for the purchase of the property. In a case like the one last supposed, it was said: "If by reason of a substantial defect in the title, the vendor is unable to carry out the contract on his part, it by no means follows that a vendee who has acquired possession thereunder can retain such possession, refuse to accept a conveyance, and arbitrarily refuse any performance on his part. He may elect to accept the title as it is, with such reduction of the purchase price as will compensate him for the deficiency (Pomeroy on Contracts, section 438, and cases cited), or rescind the contract. If he elects to rescind, he must offer to restore pos-

session upon the repayment to him of the money advanced, with interest, and the value of such improvements as he has placed on the premises, less the sum he has derived from their use and enjoyment. In such case, unless the amount he is entitled to recover be paid, or secured to his satisfaction, he may retain possession until this is done.—*McIndoo v. Morman*, 26 Wis. 588; *Taft v. Kessel*, 16 Wis. 291; *Foley v. Crow*, 37 Md. 51; *Davison v. Perrine*, 22 N. J. Eq. 87; *Wiley v. Howard*, 15 Ind. 169; *Stoddart v. Smith*, 5 Binney 355; *Woodman v. Freeman*, 25 Mo. 531."—*Florence O. & R. Co. v. McCandless*, 26 Colo. 534.

But it is apprehended that there is no fixed or arbitrary rule to control the equities of all cases.— *McIndoo v. Morman, supra;* 2 Warvelle, Vendors, section 869.

We refrain from pursuing this branch of the inquiry at greater length, because of the fact, to which attention has already been called, that no contract for purchase was ever consummated with appellant. The position of counsel for appellee that the contract was "executed upon the delivery of the deed approved by the court," is met by the unsurmountable difficulty that the deed was not accepted, because the title was not satisfactory, and could not be made so. There was, therefore, no agreement at all upon the terms of purchase, as proposed by appellant, who appears to have gone into the possession of the property and made the expenditures thereon, with the consent of appellee, pending an unconcluded negotiation for the purchase of the premises. In such circumstances, the court cannot make a contract for the parties, out of the mere fact of

possession, nor can it force appellant to accept and pay for a mere paper title to property, in direct opposition to the expressed conditions of his written proposition. The result of the matter is that the rule upon appellant to "accept the deed tendered him by the receiver, and pay the amount due on the agreed. purchase price of said property," or show cause, etc., was unauthorized, and that the final judgment entered by the court in pursuance of that rule was unsupported by the evidence.

What has been said seems to sufficiently dispose of the case upon the record presented here. The decision is confined to the proposition that appellant is not a purchaser of the property from the receiver, because of the failure to comply with the requirement of appellant's offer, with respect to title. No other question, arising out of appellant's taking or retaining possession of the property, or affecting the ownership of the building, machinery, etc., is determined. The present order will be that the judgment of the district court of Adams county is reversed, and the cause is remanded to that court, with direction to vacate the order to show cause.

*Reversed.*